## ABRAHAM B. EMBURY

*v.*

## AUGUSTUS KLEMM and others.

1. A defendant applied to the court to open a decree for deficiency made against him in a foreclosure suit, the ground of the application being that he had been inveigled into signing a request to a solicitor to enter his appearance to the suit, which he had, as he alleged, signed in assurance of its character. He made no application for relief until after he had known of the decree for at least nine months, and after the evidence had all been taken under a creditor's bill, filed upon the decree against him and his father-in-law, to set aside conveyances made by him to the latter, and the cause which he defended had been set down for hearing.—*Held,* that he was barred by his laches.

2. Conveyances by a debtor declared fraudulent as against a creditor.

Creditor's bill. On final hearing on pleadings and proofs.

*Mr. J. W. Field,* for complainant.

*Mr. R. O. Babbitt,* for defendants Whitenack and Wacksmuth.

THE CHANCELLOR.

The complainant, on the 14th of July, 1877, obtained a personal decree for deficiency against John H. Whitenack, in a suit for foreclosure brought by him against Augustus Klemm and Whitenack, and Benjamin F. Small, in this court, on a mortgage .on a tract of land in the township of West Orange, in Essex county. The decree against Whitenack was based on an assumption by him to pay the mortgage, contained in a deed from Klemm to Whitenack for the property, made on or about the 20th of January, 1877. The amount of the mortgage was computed and allowed to him as so much of the consideration of that conveyance. After applying the proceeds of the sale of the mortgaged

34

Embury *v.* Klemm.

premises, under the execution for the sale thereof issued in that cause, to the payment of the money thereby directed to be paid to the complainant, there was a deficiency of about $4,400, which is still unpaid. Execution therefor was issued against Whitenack and the other defendants, against whom personal decrees for deficiency were made in that suit, which was returned wholly unsatisfied. The complainant then filed his bill in this suit to subject to the payment of the decree for deficiency against Whitenack, a tract of land in the before-mentioned township, adjoining the mortgaged premises. For that tract Whitenack executed a deed of conveyance in fee to his father-in-law, Ludwig Wacksmuth, dated April 14th, 1877, purporting to convey it for the consideration of $4,000, and Wacksmuth and his wife, by their deed dated May 2d, 1877, conveyed it to the wife of Whitenack (who is their daughter), for the consideration, as therein expressed, of $4,000. This latter deed has never been recorded. Subsequently, the complainant filed another bill in this court to subject to the payment of that decree for deficiency against Whitenack, the money and a mortgage received by Wacksmuth as consideration of the conveyance by him of land in New York, which was owned by Whitenack on the 16th of April, 1877, and which was then conveyed by him to Wacksmuth. The two causes were, by consent of counsel, heard together on the evidence taken in this suit. At the same time a motion in behalf of Whitenack to set aside the decree for deficiency against him, and let him in to answer, on the ground of surprise and merits, was argued. Both suits and the motion will be disposed of in this opinion.

Whitenack alleges that he had no notice of the character of the foreclosure suit, and was not aware that any decree therein was sought against him. Although, in accordance with a written request to a solicitor of this court, made by him on the 5th of May, 1877, his appearance was entered, he alleges that he was inveigled into signing the request by the complainant's solicitor, and was deceived by him as to

the character and object of the suit. He alleges that he was not aware, until after the sale of the mortgaged premises had been made, that the suit was a suit for foreclosure, but was informed by the complainant's solicitor that it was an action against Klemm to recover the amount of certain promissory notes made by him and held by the complainant. It appears, however, that the complainant's solicitor published notice of the suit, directed to him and his wife, with notice of the prayer for decree for deficiency against him, and sent a copy of it by mail to his address in New York, and Whitenack does not allege that he did not receive it. The reason why the solicitor published and mailed the notice after Whitenack had signed the request that his appearance might be entered, was, that he apprehended that Whitenack's wife would not be bound by the appearance entered for her by the solicitor to whom the request was directed, because she had not signed it, and he therefore published and sent notice to both Whitenack and his wife.

Again, in October, 1877, after the mortgaged premises had been sold under the decree of foreclosure, the complainant's solicitor called on him in New York and offered to convey the property to him if he would pay the amount of the decree. Although he was then apprised of the fact that there was a decree for deficiency against him in the suit, he made no complaint of or in reference to it, nor did he ever make any, as far as appears, until after the evidence in this cause had been taken and printed, and the cause was on the list for hearing. The cause was on the list of May term, 1878, and the notice of motion to set aside the decree for deficiency was not given until the 3d of July following. He would be barred by his laches alone. His delay in making his application for relief is inexcusable. But, apart from that, the weight of evidence is against him. The weight of the testimony shows that he voluntarily and understandingly signed the request that his appearance might be entered; that no deceit or artifice was used to obtain it, and that he

not only knew of the fact that the decree for deficiency was about to be made against him, but said, when this fact was mentioned to him by the complainant's solicitor as a reason why he should take the property which the complainant had bought at the sheriff's sale under the execution, that he had " fixed his property so that no money could be collected of him."

Moreover, the application is entirely without merits. It is shown conclusively, by the evidence, that he assumed, with full knowledge of the character and extent of the obligation, the payment of the mortgage. Though he demurred at first, immediately after the contract was signed in pursuance of which the conveyance to him which contained the assumption was made, yet it is clearly proved that he was not only thoroughly apprised of the character and extent of the obligation before the deed was delivered to him, but an option was given to him by Klemm, the grantor, to extend the mortgage over the property in West Orange, in question in this suit, (which it did not cover), in lieu of the assumption, and he chose rather to assume the mortgage, and accepted the deed accordingly. The motion to set aside the decree will, therefore, be denied, with costs.

The merits of the two suits under consideration involve the question whether Whitenack was indebted to Wacksmuth when the conveyances by the former to the latter, of the property in West Orange and the property in New York, were made. If this question is decided in the negative, the conveyances must be held to be fraudulent as against the complainant. If they were voluntary, they are fraudulent as against the complainant's decree, for the obligation upon which it was obtained was then in existence. *Phelps* v. *Morrison*, 9 *C. E. Gr.* 195. But it is alleged by Whitenack and Wacksmuth that they were not voluntary. Both say that the former then owed the latter a large sum of money. Whitenack says it was over $2,800 of principal, besides interest from 1865. Wacksmuth, however, says the principal was only $2,800. There was, then, according to

Wacksmuth's statement as to the amount of principal, about $5,000, principal and interest, due from Whitenack to him. The consideration expressed in the deeds was $5,000 for the New York property and $4,000 for the other —$9,000 in all.

The deeds for the West Orange property (the deed from Whitenack to Wacksmuth and the deed from the latter to the wife of the former), which are the only original ones which have been exhibited, are both apparently filled up in the handwriting of Whitenack, and seem to have been drawn at the same time. As before stated, the deed to Wacksmuth is dated April 14th, 1877, and the deed from him to Whitenack's wife is dated on the 2d of May following. The New York property was conveyed by Wacksmuth to John W. Tayntor, in February, 1878, for the consideration of $2,200, for $2,000 of which a mortgage for that sum on property in the city of Elizabeth was assigned, and the balance ($200) was paid in cash. Whitenack obtained the purchaser for this property, and himself directed the making of the conveyance. Indeed, Wacksmuth appears to have been, both as to this and the other property, a mere depository of the title in trust for Whitenack.

The evidence in regard to the alleged indebtedness from Whitenack is by no means persuasive; but, on the other hand, it is of such a character as to induce the gravest suspicion, and, indeed, to challenge discredit. Wacksmuth and Whitenack do not agree as to its amount. Both say it was for money lent and interest thereon. The former says the money lent was only $2,800. The latter says it was more. He says Wacksmuth lent him "$2,800, at different times, and some money after that, at different times," and he produces a memorandum in which, he says, the loans were entered. It credits Wacksmuth with $150, as having been lent by him to Whitenack in January, February and March, 1868, in addition to the $2,800 lent, as alleged, in 1865; but Wacksmuth swears that the $2,800 was all that he lent Whitenack. This written memorandum is all the

written evidence of the transaction, and it is of so suspicious a character as to be of no value as evidence in favor of Wacksmuth. To the question, on cross-examination, whether he did not make all the entries in it at the same time, Whitenack answered that he " might have transferred them from some other account, possibly," and added that he had a book in which he used to keep an account—a long, narrow book; but whether he transferred these items from it or not, he said he could not say, but might have done so. Straightway afterwards, he said that he could not say whether he had the account of these loans in that book or not, and subsequently he said that his recollection was that that book had disappeared before he had anything to do with Wacksmuth. Afterwards he swore that the memorandum-book was the book in which the account was kept, and that the credits to Wacksmuth were set down at the time the loans were obtained. An examination of the books shows, beyond question, that the items constituting the $2,800 were all written at the same time, although they cover a period of more than three months, from April 20th to August 1st. In his direct examination, he swore positively that the memorandum in question was the only record of the loans, and that the entries therein were made at the dates of the items. In 1868, he made application to be adjudicated a bankrupt. In his schedule, he said, on oath, that he had no individual creditors. Both he and Wacksmuth say that he gave Wacksmuth nothing to show for the money when (as they say) he borrowed it.

Wacksmuth says he does not know whether the first money ($200) was borrowed before or after Whitenack married his daughter, which was April 16th, 1865. He says he worked for the money, and earned it. He is a tailor. In 1866, he sold out his shop in New York, for $200, and came over to Jersey City to live. He bought a lot there, for $200, and put a house upon it. Whitenack built it for him. It cost Wacksmuth about $1,000, and he says he paid Whitenack the cash for it, and that the loan

was not applied to the payment of the building, but still remained. He gave a mortgage of $300 on the property, which he appears to have never been able to pay. He says that in December, 1876, and again in January following, he asked Whitenack for money to pay this mortgage, but the latter said he could not give him any. He says he asked him to pay the whole of the money which he owed him ($2,800), and that Whitenack, professing to be unable to pay him in any other way, proposed to convey, and did convey, accordingly, the New York and West Orange property to him for his debt. No discharge or acquittance of any kind was given. As before stated, the consideration of the deeds was, in the aggregate, $9,000, while the alleged debt and interest amounted only to about $5,000. Immediately after the conveyance of the West Orange property to him, he conveyed it to his daughter (Whitenack's wife), as a gift, he says, not even requiring money enough to pay the mortgage of $300 on his house, on which, it appears, he has been compelled to ask for an extension of time. The deed to Whitenack's wife expresses a consideration of $4,000. It has never been recorded. A very short time after the foreclosure suit was begun (it was commenced in March, 1877), Klemm informed Whitenack of it, and after that, and about the middle of April, 1877, the complainant's solicitor spoke to him on the subject. It is, therefore, manifest that, when the conveyances to Wacksmuth were made, Whitenack knew that suit had been begun against him. When the complainant's solicitor spoke to him, in October, 1877, as to his liability to a decree for deficiency in that suit, he said he "had no property; that he had fixed his property so that he had none; that he owed his mother $1,000, and he had fixed his property so as to cover that, and had shaped his affairs so that no money could be collected of him."

There is about the conveyances abundant evidence of fraud. They were made after the foreclosure suit was commenced. They conveyed all Whitenack's real property. The conveyances were made to his father-in-law. In less

than three weeks afterwards, Whitenack having drawn, or caused to be drawn, without consultation with or direction from his father-in-law, a deed for the West Orange property, conveying it to Whitenack's wife, for the pretended consideration of $4,000, produced it, and Wacksmuth and his wife at once executed it. That deed was, in fact, a secret conveyance. Though Wacksmuth states that the reason why he obtained the conveyances from Whitenack was, that he wanted his money, he conveyed away, without consideration, and, as he says, as a present, the West Orange property. Wacksmuth never saw the property, and says he knows nothing of its value. As to the New York property, after it was conveyed to Wacksmuth, Whitenack continued to exercise complete control over it, as far as appears. It was he who found a purchaser for it. He caused the deed for it to the purchaser to be drawn, and directed Wacksmuth to execute it, and he did so accordingly. Whitenack left both of the deeds to Wacksmuth at the recording offices, to be recorded. The evidence adduced to prove consideration of the conveyances to Wacksmuth, is of such a character as to excite distrust and induce disbelief. The amount of the consideration expressed in the deeds is not in accordance with the statements of Whitenack and Wacksmuth as to the consideration of these conveyances. For the alleged debt which, as they say, formed that consideration, there never was any evidence in the hands of the pretended creditor, and when, as they say, it was paid by the conveyances, there was no receipt or acquittance given for it. Wacksmuth was a man of but small means, so small that he has not been able for years to pay off a $300 mortgage on the house in which he lives. He employed Whitenack to build that house, and paid him $1,000 in cash, although, as they say, the latter then owed him $2,800, and they give no reason whatever for this unusual course of business. Wacksmuth, though (as he says) he pressed Whitenack to pay him so that he might pay the $300 mortgage, and the latter conveyed the two properties to him accordingly, gave away the West

Orange property almost as soon as it was conveyed to him. Until the property in New York and the property in West Orange were conveyed to him by Whitenack, he had no property except the property (a house and lot) in which he lives.    There is not only no satisfactory evidence of the existence of a debt from Whitenack to Wacksmuth, but Whitenack, in 1868, declared, on oath, that he owed no individual debts, and Wacksmuth does not appear to have asked for payment from 1865 to the end of 1876, eleven years.

The conveyance from Whitenack to Wacksmuth will be declared to have been fraudulent as against the complainant; but as to the New York property, the $200 and the mortgage received by Wacksmuth for the price of that property will be subjected to the payment of the decree, the purchase by Tayntor being, so far as he was concerned, as far as appears, *bona fide.*